## Heard's Estate.

*Decedents' estates—War risk insurance—Distribution—Death of beneficiary—Regulations of Bureau of War Risk Insurance.*

1. Under the Federal War Risk Insurance Acts of Oct. 6, 1917, 40 Stat. at L. 409, as amended Dec. 24, 1919, 41 Stat. at L. 375, June 7, 1924, and March 4, 1925, the interest of a designated beneficiary is not a vested one and cannot be disposed of by will, and if, on the death of such beneficiary, there is no survivor of the insured within the designated class of beneficiaries, the present value of subsequent instalments goes to the estate of the insured to be distributed among his next of kin according to the intestate laws.

2. Only unpaid instalments accruing before the death of the beneficiary are a part of his estate and should be paid to his personal representative and be distributed as provided in his will or according to the intestate laws.

First and final account of administratrix. O. C. Erie Co., Sept. T., 1926, No. 84.

*Rossiter, Herbst & Dunn,* for exceptants.

*Ernest* and *Francis Heard* and *March & Eaton,* for Julia Rathbun.

CLARK, P. J., March 22, 1927.—Julia M. Rathbun was appointed administratrix of the estate of Francis J. Heard, deceased.

The accountant charges herself with $9757; claims credit of $1222.85; leaving a balance due of $8534.15, for distribution. The $9757 came from war risk insurance, and to this, since the filing of the account, $110 were received from another source, thus making total balance of $8644.15 in the custody of the administratrix.

Francis J. Heard was a soldier in the World War and, from reports of his officer, was killed in action July 15, 1918, in France; and was insured under the War Risk Insurance Act of Oct. 6, 1917, 40 Stat. at L. 409, for $10,000; and designated his grandmother, Louise Parkhurst Cook, the beneficiary; and payments were made to her up to the date of her death, Feb. 18, 1919. She made her will Dec. 16, 1918, and gave to Julia M. Rathbun, the administratrix, household furniture and fixtures and "one-half of my estate, including one-half of the Government life insurance made to me by grandson, Francis J. Heard, . . . and to my grandson, Merl J. Cook and my granddaughter, Ethel Louisa Williams, the remaining half of my estate, including one-half of the Government life insurance. . . ." Feb. 15, 1919, by her codicil, these bequests were changed, and in it she gave "all payments to which I may now be entitled or would be were I to live, payable upon a policy issued by the Bureau of War

Heard's Estate.

Risk Insurance to Francis J. Heard in which policy I am named as beneficiary, after paying my debts and funeral expenses, first, payments to be paid to my sister, Mrs. Julia M. Rathbun, for and during her life and after her death, balance of payments to be paid to Ethel L. Williams, my granddaughter, of Salt Lake City, Utah."

Evidently the testatrix believed that this war risk insurance after her death would be a part of the assets of her estate; briefly, that she had a vested interest in it and, as such, she could dispose of it by her will.

Accrued and unpaid payments up to the time of her death are a part of her estate and that is all; the remaining insurance after her decease is not an asset of her estate and she cannot dispose of it by her will.

It has been contended that the interest of a designated beneficiary under the provisions of the War Risk Insurance Act of Oct. 6, 1917, was a vested interest, and that to deprive such person of it by the subsequent legislation of the Act of Dec. 24, 1919, ch. 16, § 13, 41 Stat. at L. 371, 375, would be taking the property without due process of law.

The designated beneficiary cannot dispose of the insurance by will; it is not vested, and it has been so decided by the Federal courts.

In the U. S. District Court, Middle District of Pennsylvania, it was set forth, July 2, 1923, Witmer, J., in Gilman Heirs v. United States, 290 Fed. Repr. 614, that: "In the case of Cassarello v. United States (D. C.), 271 Fed. Repr. 486, affirmed by the Circuit Court of Appeals, 279 Fed. Repr. 396, this court states that the contract between the Government and the insured is not an ordinary contract of insurance, and held that, since in principle it lacked the character of a vested interest, the same could not be passed by the last will of the designated beneficiary."

The decision in the Gilman Heirs case, supra, was affirmed by the Circuit Court of Appeals, 294 Fed. Repr. 422, Jan. 2, 1924.

And it was held in Hurst v. United States (D. C.), 283 Fed. Repr. 600, that there was no disturbance of a vested right by the Act of 1919. The decision in this case was affirmed by the Circuit Court of Appeals, Sixth District, Jan. 11, 1924, 294 Fed. Repr. 417.

The United States Supreme Court has decided that there was no vested interest, and Gilman Heirs v. United States, supra, and Hurst v. United States, supra, were cited with approval in the opinion of Justice Holmes, March 1, 1926, in White v. United States and Reeves, reported in Advance Opinions 1925-1926, 70 L. Ed., No. 9, pages 316, 317, March 15, 1926, and [that case] affirms the decision of the District Court, Eastern District of Virginia, reported in 299 Fed. Repr. 855.

The reasons for these decisions are fully set forth in them and can be examined by any one interested in the subject-matter; we have not attempted to recite them.

The Act of Oct. 6, 1917, 40 Stat. at L. 409, designated the beneficiaries from which classification the soldier could make his selection in favor of whom the insurance might run. These beneficiaries were limited by the act, which provides that: "The insurance shall not be assignable, and shall not be subject to the claims of creditors of the insured or of the beneficiary. It shall be payable only to a spouse, child, grandchild, parent, brother or sister, and also during total and permanent disability to the injured person, or to any or all of them."

As to who are included or intended or meant by the terms "child," "grandchild," "parent," etc., the designated persons, see same act, page 401. The term "parent" includes a father, mother, grandfather, grandmother, step-

Heard's Estate.

father and stepmother, either of the person in the service or of the spouse. Hence, the soldier's designation of his grandmother as the beneficiary was permissible.

And this act further provides: "Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided. If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy."

Note that payment of the insurance is limited to the "permitted class of beneficiaries," under the conditions named; in the case being considered, the designated beneficiary survived the insured, but is now dead.

In the case of Cassarella v. United States, *supra*, Judge Witmer has given a very informative decision upon various questions; among others, that the rules and regulations prescribed by a department of the Government in pursuance of statutory authority have the force of law, and cites several cases of the Federal courts, including the Supreme Court, in support.

Authorized by Congress, the Director of the Bureau of War Risk Insurance did make certain rules and regulations, and they are binding; and, further: "A contract made in pursuance of a Federal statute must be construed with reference to such statute and cannot be controlled by the state laws or decisions," and authorities are cited sustaining this, and reference is made to an opinion by Mr. Justice Pitney, of the United States Supreme Court, in the case of the Duplex Printing Press Co. v. Deering, etc., 254 U. S. 443, 41 U. S. Sup. Ct. Reps. 172, 165 L. Ed., wherein it was held that the debates in Congress by members are not a safe guide generally, but that the reports of committees may be considered in determining the legal intent where the meaning is obscure and this has been ". . . extended to include explanatory statements in the nature of a supplemental report made by the committee member in charge of a bill in course of passage," and thereupon he proceeds to quote from the statement made by a member of the House of Representatives, one of the Committee on Interstate and Foreign Commerce, submitting a supplemental report in the House on Sept. 5, 1917, and with reference to whom the insurance shall be given, said: ". . . It must not be payable to any and every one, but to a limited class of relatives" (House Report 130, pt. 3, and further said: "If you have a wife, though, or children, or mother dependent upon you, and you are killed, this insurance money may go to them because you have a personal and direct interest in them. Some distant cousin off yonder that you never saw, or some uncle, probably who is living in opulence, who does not need the money, will not get it:" Congressional Record, Sept. 8, 1917, page 6761.

The original bill designating the beneficiaries had the following clause in it as it went from the House to the Senate: "And to such other persons as may be provided from time to time by regulation," but this was struck out in the Senate so that the insurance might pass to the soldier's dependents named in the Act of Oct. 6, 1917, a limited class.

The writer, a member of the House when this bill was passed, cannot entirely exclude from his own mind the impressions received when the bill was under consideration in determining its plain purport, and what has thus been said coincides with the writer's impression.

Heard's Estate.

If there had not been any further congressional legislation and the Federal courts had not decided otherwise, we would decide that in the distribution of the insurance money those persons entitled to receive it are limited to those who are designated in the Act of Oct. 6, 1917, and therein described as the "permitted class of beneficiaries." But there has been other legislation; it and judicial decisions and the interpretation of the Director of the United States Veterans' Bureau govern our conclusions.

Times and customs change and laws are amended, and in the operation of the Act of Oct. 6, 1917, it developed that there were others than those persons named in the act for whom the insured soldier would prefer to have the insurance made, and as deserving, perhaps, as those mentioned in the act. Congress, therefore, passed the Act of Dec. 24, 1919, ch. 16, § 13, 41 Stat. at L. 375. See, also, U. S. Compiled Statutes of 1916, Annotated 1923, Supplement Vol. 1, page 61, § 514 u u u ¾, made effective as of Oct. 6, 1917, and an additional permitted class of beneficiaries were included, viz.: Uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured and to one standing *in loco parentis* for not less than one year to a member of the military or naval forces prior to enlistment and induction.

And thus it happens that the "opulent uncle," if any there may be, is taken care of, but the "distant cousin off yonder that you never saw" is as yet still distant and unprovided for.

The Act of Dec. 24, 1919, enlarged the number of permitted beneficiaries provided for in the Act of Oct. 6, 1917. Further and controlling legislation is found in the World War Veterans' Act of June 7, 1924, and its amendment of March 4, 1925. Section 303 of the World War Veterans' Act of June 7, 1924, made effective as of Oct. 6, 1917, is as follows:

"Sect. 303. If no person within the permitted class of beneficiaries survives the insured, or if, before the completion of payments, the beneficiary or beneficiaries shall die and there shall be no surviving person within said permitted class, then there shall be paid to the estate of the insured the present value of the monthly instalments thereafter payable under the provisions of this title: Provided, that in cases where the estate of the insured would escheat under the laws of the place of his residence, the insurance shall not be paid to the estate of the insured, but shall escheat to the United States and shall be credited to the United States Government life insurance fund or the military and naval appropriation as may be proper. This section shall be deemed to be in effect as of Oct. 6, 1927."

This section 303 was amended in section 14 of the Act of March 4, 1925, entitled "An act to amend the World War Veterans' Act of June 7, 1924." The amendment was also made effective as of Oct. 6, 1917, and reads as follows:

"Sect. 14. Section 303 of the World War Veterans' Act of June 7, 1924, is hereby amended to read as follows:

"Sect. 303. If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty instalments, or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly instalments thereafter payable, said value to be computed as of the date of the last payment under any existing award: Provided, that all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this act shall continue until the death of the person receiving such payments, or until he forfeits same under the provi-

Heard's Estate.

sions of this act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance, then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly instalments of the insurance so awarded to such person: Provided, further, that no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment: Provided, further, that in cases when the estate of an insured would escheat under the laws of the place of his residence, the insurance shall not be paid to the estate, but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of Oct. 6, 1917."

By reason of these acts, the persons entitled to participate in the distribution of the solder's insurance in the instant case are determined by the laws of Pennsylvania, and the former prescribed permitted beneficiaries as set forth in the Acts of Congress heretofore recited are not the only ones. In determining who are the next of kin, an administrator follows the laws of the State.

On examination of the Acts of Congress, the decisions of the United States courts and other sources of information, we reach the following conclusions:

1. That the "Regulations" made by the proper person, the Director of the Bureau, to whom authority to do so was given by the legislative Acts of Congress, were effective and binding.

2. That the insurance agreement entered into by the insured under the Act of Oct. 6, 1917, supplementary of the Act of Sept. 2, 1914, was subject to modification, changed by Congress under the Act of Dec. 24, 1919, and these acts did not create a vested interest in the beneficiary in instalments maturing after his death.

3. That unpaid instalments accruing before his, the beneficiary's, death are a part of his estate and should be paid to his personal representative (administrator or executor) and be distributed as provided in his will, if any, and if not, then according to the intestate laws of the state wherein he had his domicile.

4. That a beneficiary cannot dispose of, by will, any part of the insurance other than the unpaid instalments accruing up to the time of his death.

5. That, in the instant case, upon the death of the beneficiary, the remaining insurance must be paid to the estate of the insured and be distributed according to the intestate laws of the State of Pennsylvania, where he lived; to his next of kin as determined by the laws of this State. The insurance money having passed out of the hands of the Government into the custody of and control of a fiduciary of the insured, the laws of the Commonwealth where he had his domicile become operative.

An interpretation by the general counsel of the War Veterans' Bureau is as follows: "Section 303 of the World War Veterans' Act provides for the payment to the representative of the veteran's estate of the present value of the remaining insurance. In the distribution of this sum, the representative of the veteran's estate is governed entirely by the laws of the state of residence of the veteran, and so long as the Veterans' Bureau is assured that there will be no escheat, the disposition of the funds in the hands of the administrator is a matter over which the bureau has no control."

We have presumed that the original certificate of insurance is like others issued at approximately the same time under the Acts of Congress and contained the following: "Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending 'An act to authorize the establishment of a Bureau of War Risk Insurance in the Treas-

ury Department,' approved Sept. 2, 1914, 'and for other purposes,' approved Oct. 6, 1917, and subject in all respects to the provisions of such act, or any amendment thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance and the terms and conditions published under the authority of the act, shall constitute the contract. . . ."

Counsel in open court stated: "We are going to raise the question: Who is to receive the money?" The question may be considered raised.

We have cited acts and decisions bearing upon the subject; these and others which counsel may find may be helpful in their preparation of a suggested distribution with a result that this opinion should be modified.

It must be remembered and considered in the contemplated distribution that a part of the assets of the estate comes from a source outside of the insurance.

It is ordered that counsel prepare and submit, on or before April 4, 1927, a suggested distribution in accordance with the foregoing opinion as to who are the next of kin of the insured.          From Otto Herbst, Erie, Pa.